UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

CARLOS MOREJON,

    Plaintiff,

vs.

JAMES E. ALBERTELLI, P.A. d/b/a
ALAW

    Defendant

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CARLOS MOREJON, ("Morejon or Plaintiff"), sues the Defendant, JAMES E.
ALAW d/b/a ALAW ("ALAW or Defendant") and as grounds therefore states:

## JURISDICTION AND VENUE

1.    This is an action under the Fair Debt Collections Practices Act.

2.    This Court has subject matter jurisdiction of this case under the Federal Debt
Collections Practices Act, 15 U.S.C. § 1692 et. Seq. ("FDCPA"), and 28 U.S.C. § 1331.

3.    Venue is proper in the United States District Court for the Southern District of
Florida under 28 U.S.C. §§ 1391(a) through (c). Plaintiff has been sued by the Defendant in Miami-
Dade County and Defendant conducts business in this District.

## PARTIES

4.    Plaintiff, CARLOS MOREJON, resides with his family at his home located at
11251 SW 157th Street, Miami, FL.

1

5.     Plaintiff's home was previously owned by his father, Antonio Morejon, and was used primarily for personal, family or household purposes. Antonio Morejon resided with Plaintiff, in said home, until his death.

6.     Plaintiff is a natural person who resides in Miami Dade County, Florida and is consumer as defined in 15 U.S.C. § 1692a(3).

7.     Defendant, ALAW ("The Firm") is a law firm with its principal place of business located at 5404 Cypress Center Drive, Suite 300, Tampa, FL 33609.

8.     The Firm was retained by Nationstar Mortgage LLC, the servicer of the loan, to collect past due mortgage payments allegedly owed.

9.     The Firm regularly collects or attempts to collect consumer debts asserted owed or due and regularly uses the mail and other instrumentalities of interstate commerce in its attempts to collect debts asserted to be owed or due by consumers. In the case of Plaintiff, a Complaint attempting to foreclose a lien was filed by the Defendant to collect a consumer debt.

10.    ALAW is a debt collector as defined in 15 U.S.C. §1692a(6).

11.    The Firm has intentionally violated, by act or omission, a provision or provisions of the FDCPA.

**GENERAL ALLEGATIONS**

12.    On January 24, 2012, the Firm filed a Complaint against the Plaintiff seeking to foreclose his interest in said property.  See "Exhibit A" (copy of Complaint).

13.    Plaintiff was served with the Complaint on February 2, 2012.

14.    The Complaint alleged that $92,574.43 dollars was owed for principal, plus interest, court costs and attorney fees.

AMADOR & CUELLAR, PLLC 1330 SW 22ND STREET, SUITE 304 MIAMI, FL 33145 TEL: (305) 901-3337 FAX: (305) 647-0669

15.   During the pendency of the foreclosure, Morejon attempted but was unable to resolve the foreclosure by trying to assume the mortgage and or modifying the mortgage.

16.   On September 9, 2016, Defendant obtained a judgment, in the amount of $165,799.28, and a sale date for the property to be sold at auction.   See "Exhibit B" (copy of amended final judgment.)

17.   Attempting to save the property that Plaintiff and his family resided in, Morejon applied and obtained a loan commitment to refinance the outstanding loan.

18.   Morejon immediately requested a payoff and on December 7, 2016 ALAW provided the first of several incorrect payoffs. The December 7, 2016 payoff letter sought $173,671.31 dollars. See "Exhibit C", letter from ALAW.

19.   Counsel for Plaintiff advised ALAW several times that the payoff amount was incorrect and the reasons why it was incorrect.

20.   On February 21, 2017, ALAW provided the second of three inaccurate payoffs to Morejon.  See "Exhibit D", letter from ALAW.

21.   The second payoff was also incorrect, but Defendant refused to correct the payoff amount. The second payoff requested $184,995.82 dollars or the firm would continue their foreclosure action and "would not suspend any hearing, trial or sale of the property."

22.   Defendants refusal to correct the payoff resulted in Plaintiff requiring a loan commitment for a higher than expected amount.

23.   Plaintiff continued with his refinance efforts even though the payoff amounts provided by ALAW were incorrect. Their refusal to correct the payoff amount left the Plaintiff with little option but to refinance at the inaccurate amount or lose the home that he and his

3

family resided in and that had been the family home for decades. The closing was subsequently scheduled for the first week of March 2017.

24.   On March 3, 2017, Plaintiff closed on said property but needed a new payoff good through and including the rescission period of the loan and prior to disbursement of funds. Plaintiff made several attempts to obtain an updated payoff prior to the closing date.

25.   Despite several attempts to obtain an updated and accurate payoff, Defendant's failed to provide an updated accurate payoff resulted in the closing and purchase of Morejons' home being reversed.

26.   The reversal of the closing forced Plaintiff to obtain a new loan with a higher interest rate.

27. On March 15, 2017, ALAW provided the third payoff seeking $178,743.40 dollars. See "Exhibit E", letter from ALAW.

28.   Despite numerous attempts to obtain an accurate payoff, pointing out the reasons why the amounts listed were wrong, Defendant's third final payoff was also incorrect.

29. Specifically, Mr. Morejon pointed out the interest charges were incorrect, Defendant was charging interest rates based on the Note not the Judgment. Additionally, there were errors in escrow disbursements.

30.   After providing the third inaccurate payoff, the loan was assigned to a different Law Firm.

31.   Each time an incorrect payoff was provided Plaintiff incurred attorney fees, increased costs, expenses and time of work to resolve the matter.

32.   Plaintiff was forced to seek counsel on three occasions to file a Motion to Cancel Sale, resolve the closing extensions and probate matters due to Defendants errors.

AMADOR & CUELLAR, PLLC 1330 SW 22ND STREET, SUITE 304 MIAMI, FL 33145 TEL: (305) 901-3337 FAX: (305) 647-0669

33.     Ultimately, the new Law Firm, Kelley Kronenberg, by and through the servicer, Shellpoint, provided a true and accurate payoff.  See "Exhibit "F", payoff letter from Shellpoint.

34.     The debt that ALAW sought to collect from Plaintiff were for consumer debts in the form of an outstanding mortgage loan, and other amounts as detailed above that was allegedly owed Federal National Mortgage Association as the owner of the note, and Nationstar as the servicer for the loan. The alleged debt is a debt within the meaning of 15 U.S.C. § 1692a(5).

35.     Defendant was advised from the issuance of the first payoff that the amounts stated were inaccurate. Defendant continued to provide payoff letters with an inaccurate amount and without making any effort to confirm their accuracy.

36.     The inaccurate amounts being sought by Defendant resulted in Plaintiff being initially unable to qualify for a loan, paying a higher interest rate, thousands of dollars more than actually owed, and thousands of dollars more over the life of the loan.

37.     The threat of losing his home, especially for an amount that was inaccurate in the thousands of dollars, resulted in Plaintiff having suffered undue distress and anxiety.

38.     Plaintiff has also suffered actual damages in the form of attorney's fees he incurred due to Defendant's inaccurate payoff figures and closed with a higher interest rate in the term of the loan for the home, due to Plaintiff's delays and errors.

### COUNT I - 15 U.S.C 1692d

39.     Plaintiffs re-alleges and incorporates paragraphs 1 through 38 by reference herein.

40.     Defendant knew the amounts it sought to collect in the December 7, 2016, February 21, 2017 and March 15, 2017 payoff letters were incorrect and in violation of the Fair

5

Debt Collections Practices Act when it knew the debt amount was incorrect and made no attempts to verify its accuracy.

41.   The Firm knew the debts at issue were illegitimate and the legal right to collect those amounts did not exist for the reasons set forth above. The Firm knew what dates the debts were incurred and what the debt was comprised of.

42.   The Firm violated 15 U.S.C 1692d, by willfully engaging in conduct which could reasonably be expected to abuse or harass Plaintiff, by sending a payoff letter for an amount exceeding the actual amount due by thousands of dollars, even after repeated requests by Plaintiff to correct the amount.

**WHEREFORE**, Plaintiff seeks a judgment against Defendant, ALAW, for the recovery of statutory damages, actual damages, reasonable attorney's fees, and costs of the action pursuant to 15 USC 1692k, together with prejudgment interest and such further relief as this Court deems just and proper.

## COUNT II - 15 U.S.C 1692e

43.   Plaintiffs re-alleges and incorporates paragraphs 1 through 38 by reference herein.

44.   The Firm  violated 15 U.S.C 1692e by using false, deceptive, or misleading representation or means in connection with the collection of the debt when it provided three (3) payoff letters with the incorrect amount.

**WHEREFORE**, Plaintiff seeks a judgment against Defendant, ALAW, for the recovery of statutory damages, actual damages, reasonable attorney's fees, and costs of the action pursuant to 15 USC 1692k, together with prejudgment interest and such further relief as this Court deems just and proper.

AMADOR & CUELLAR, PLLC 1330 SW 22ND STREET, SUITE 304 MIAMI, FL 33145 TEL: (305) 901-3337 FAX: (305) 647-0669

## COUNT III - 15 USC 1692e(2)(A)

45.     Plaintiffs re-alleges and incorporates paragraphs 1 through 38 by reference herein.

46.     Defendant knew or should have known the amounts it sought to collect in the December 7, 2016, February 21, 2017 and March 15, 2017 payoff letters were improper. Defendant violated 15 USC 1692e(2)(A) by falsely representing the character, amount, or legal status of the debt.

**WHEREFORE**, Plaintiff seek a judgment against Defendant, ALAW, for the recovery of statutory damages, actual damages, reasonable attorney's fees, and costs of the action pursuant to 15 USC 1692k, together with prejudgment interest and such further relief as this Court deems just and proper.

## COUNT IV – Violation of 15 U.S.C 1692e(10)

47.     Plaintiffs re-alleges and incorporates paragraphs 1 through 38 by reference herein.

48.     Defendant attempts to collect a debt violated 15 USC 1692e(10) by using false representation or deceptive means to collect or attempt to collect a debt when it knew or should have known the debt amount was incorrect.

**WHEREFORE**, Plaintiff seek a judgment against Defendant, ALAW for the recovery of statutory damages, actual damages, reasonable attorney's fees, and costs of the action pursuant to 15 USC 1692k, together with prejudgment interest and such further relief as this Court deems just and proper.

## COUNT V – Violation of 15 U.S.C 1692f

7

49.     Plaintiffs re-alleges and incorporates paragraphs 1 through 38 by reference herein.

50.     Defendant violated 15 U.S.C. § 1692f. The firm's conduct was unfair or unconscionable where it knowingly and intentionally sought to recover amounts which it was not legally entitled to recover. The Firm knew the amounts sought were illegitimate and the legal right to collect those amounts did not exist for the reasons set forth above.

**WHEREFORE**, Plaintiff seek a judgment against Defendant, ALAW, for the recovery of statutory damages, actual damages, reasonable attorney's fees, and costs of the action pursuant to 15 USC 1692k, together with prejudgment interest and such further relief as this Court deems just and proper.

### COUNT VI – Violation of 15 USC 1692f(1)

51.     Plaintiffs re-alleges and incorporates paragraphs 1 through 38 by reference herein.

52.     Defendant violated 15 USC 1692f(1) by collecting or attempting to collect amounts not expressly authorized by the agreement creating the debt or permitted by law.

**WHEREFORE**, Plaintiff seek a judgment against Defendant, ALAW, for the recovery of statutory damages, actual damages, reasonable attorney's fees, and costs of the action pursuant to 15 USC 1692k, together with prejudgment interest and such further relief as this Court deems just and proper.

*Signature Page to Follow*

AMADOR & CUELLAR, PLLC 1330 SW 22ND STREET, SUITE 304 MIAMI, FL 33145 TEL: (305) 901-3337 FAX: (305) 647-0669

Dated: March 13, 2018

Respectfully submitted,

**AMADOR & CUELLAR, PLLC.**
1330 SW 22 ST., SUITE 304
MIAMI, FL 33145
TEL. (305) 901-3337
FAX. (305) 647-0669
SERVICE EMAIL: efiling@aclawoffices.net

BY: /s/ *Abbie B. Cuellar*
ABBIE B. CUELLAR, ESQ.
FLORIDA BAR NO. 97756
MONICA AMADOR, ESQ.
FLORIDA BAR NO. 29994
ATTORNEY FOR PLAINTIFF

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

NATIONSTAR MORTGAGE LLC,

      Plaintiff,

vs.

THE UNKNOWN HEIRS, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, CREDITORS, TRUSTEES, OR OTHER CLAIMANTS CLAIMING BY, THROUGH, UNDER, OR AGAINST, ANTONIO MOREJON, DECEASED;AMERICAN EXPRESS COMPANY;ANTONIO MOREJON, JR., AN HEIR OF THE ESTATE OF ANTONIO MOREJON;CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION F/K/A CAPITAL ONE BANK;CARLOS MOREJON, AN HEIR OF THE ESTATE OF ANTONIO MOREJON; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; TENANT #1, TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession

      Defendant(s).

CASE NO.:

DIVISION:

## VERIFIED MORTGAGE FORECLOSURE COMPLAINT

Plaintiff, Nationstar Mortgage LLC, sues Defendants, The Unknown Heirs, Devisees, Grantees, Assignees, Lienors, Creditors, Trustees, or other Claimants claiming by, through, under, or against, Antonio Morejon, deceased; American Express Company; Antonio Morejon, Jr., an Heir of the Estate of Antonio Morejon; Capital One Bank (USA), National Association F/k/a Capital One Bank; Carlos Morejon, an Heir of the Estate of Antonio Morejon;  Any and All Unknown Parties Claiming By, Through, Under, and Against the Herein Named Individual Defendant(s) Who Are Not Known to be Dead or Alive, Whether Said Unknown Parties May Claim an Interest as Spouses, Heirs, Devisees, Grantees, or Other Claimants; Tenant #1,  Tenant #2, Tenant #3, and  Tenant #4, the names being fictitious to account for parties in possession, and alleges:

## MORTGAGE FORECLOSURE

1.       This is an in rem action to foreclose a mortgage on real property(hereinafter 'Property') located and situated in Miami-Dade County, Florida.

2.       On May 23, 2007, there was executed and delivered a Promissory Note ("Note") and a Mortgage securing the payment of the Note.  The Mortgage was recorded on August 29, 2007, in Official Records Book 25890 at Page 1565 of the Public Records of Miami-Dade County, Florida, (All subsequent recording references are to the public records of Miami-Dade County, Florida) and mortgaged the real and personal property ("Property") described therein, then owned by and in possession of the Mortgagor(s). Copies of the original Mortgage Note and Mortgage are attached hereto and incorporated herein as an Exhibit.

3.       Federal National Mortgage Association is the owner of the note. Plaintiff is the servicer of the loan and is the holder of the note. Federal National Mortgage Association has authorized Plaintiff to bring this present action.

4.       The Property is now owned of record by Defendant(s), The Unknown Heirs, Devisees, Grantees, Assignees, Lienors, Creditors, Trustees, or other Claimants claiming by, through, under, or against, Antonio Morejon, deceased.

5.       The Note and Mortgage are in default.  The required installment payment of February 1, 2011, was not paid, and no subsequent payments have been made.  The Mortgage is contractually due for the February 1, 2011 payment.  The last



Exhibit "A"

payment received was applied to the January 1, 2011 installment, and no subsequent payments have been applied to the loan.

6. Plaintiff declares the full amount payable under the Note and Mortgage to be now due.

7. Plaintiff must be paid $92,574.43 in principal on the Note and Mortgage, together with interest from January 1, 2011, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

8. All conditions precedent to the acceleration of the Note and foreclosure of the Mortgage have been performed or have occurred.

9. Plaintiff has retained the law firm of Albertelli Law in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection. Plaintiff shall be entitled to an award of any fees and costs incurred in this action based on the terms of the instruments upon which this action is based.

10. The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage, unless as otherwise provided for by law.

11. The Unknown Heirs, Devisees, Grantees, Assignees, Lienors, Creditors, Trustees, or other Claimants claiming by, through, under, or against, Antonio Morejon, deceased may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of the death of Antonio Morejon who obtained title through that certain Warranty Deed recorded in Official Records Book 17439, Page 3061; subject to the administration of the Estate, or may otherwise claim an interest in the Property.

12. American Express Company may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Final Judgment in Official Records Book 25382, Page 3659, or may otherwise claim an interest in the Property.

13. Antonio Morejon, Jr., an Heir of the Estate of Antonio Morejon may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of the death of Antonio Morejon who obtained title through that certain Warranty Deed recorded in Official Records Book, or may otherwise claim an interest in the Property.

14. Capital One Bank (USA), National Association f/k/a Capital One Bank may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Final Judgment recorded in Official Records Book 25105, Page 3836, or may otherwise claim an interest in the Property.

15. Carlos Morejon, an Heir of the Estate of Antonio Morejon may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of the death of Antonio Morejon who obtained title through that certain Warranty Deed recorded in Official Records Book 17439, Page 3061; subject to the administration of the Estate, or may otherwise claim an interest in the Property.

16. Tenant #1, Tenant #2, Tenant #3 and Tenant #4, the names being fictitious to account for parties in possession who may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Section 45.031, Florida Statutes (1999); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of

rents, issues, income and profits pursuant to Section 697.07, Florida Statutes (1995); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

### FLA. R. CIV. P. 1.110(b) VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Printed name: Jamesia Austin, Assistant Secretary

Title: Assistant Secretary

Company: Nationstar Mortgage, LLC

Date: 1/9/12

Plaintiff, by and through the undersigned attorney, prays this honorable Court grant the above requested relief and such other relief deemed appropriate and just.

Albertelli Law
P.O. Box 23028
Tampa, Florida 33623
(813) 221-4743

By:_____
CAEDEN C. DRAYTON, ESQ.
FLORIDA BAR NO. 61651

EH - 11-80993

CFN 2007R0857288
OR Bk 25890 Pgs 1565 - 1581; (17pgs)
RECORDED 09/29/2007 12:04:36
MTG DOC TAX 539.50
INTANG TAX 194.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:
American Brokers Conduit
4650 Regent Blvd., Suite 100
Irving, TX 75063-2250

This document was prepared by:
Iris Flores
1060 Maitland Center Commons
Suite 230
Maitland, FL  32751

**GLOBAL FIRST TITLE INC.**
*La Palma Building*
**116** Alhambra Circle., Ste. 220A
Coral Gables; FL 33134

———————— [Space Above This Line For Recording Data] ————————

## MORTGAGE
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   May 23, 2007
together with all Riders to this document.
(B) "Borrower" is ANTONIO MOREJON and DELFINA MOREJON, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is American Brokers Conduit

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3010 1/01

-6A(FL) (0005)
Page 1 of 16
VMP MORTGAGE FORMS - (800)521-7291

Lender is a   Corporation
organized and existing under the laws of   State of New York
Lender's address is   538 Broadhollow Road, Melville, NY  11747

(E) "Note" means the promissory note signed by Borrower and dated  May 23, 2007
The Note states that Borrower owes Lender  Ninety Seven Thousand and No/100

Dollars

(U.S. $97,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    June 1, 2037             .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(FL) (0005)                    Page 2 of 16          Initials: _____          Form 3010  1/01

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County [Type of Recording Jurisdiction] of Miami-dade [Name of Recording Jurisdiction]:

PLEASE SEE ATTACHED LEGAL DESCRIPTION

Parcel ID Number: 30-5030-012-0400     which currently has the address of
11251 SW 157 STREET     [Street]
MIAMI     [City], Florida   33157     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0811)     Page 3 of 15     Form 3010  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

-6A(FL) (0505)                        Page 4 of 16                    Initials: _____    Form 3010  1/01

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard

-6A(FL) (0011)                                Page 6 of 16         Initials: _AB_ DF                Form 3010  1/01

or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise

-6A(FL) (0811)          Page 7 of 16          Initials: _____          Form 3010   1/01

agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of

-6A(FL) (0005)                                Page 8 of 15                    Initials: _____ PF    Form 3010  1/01

disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

-6A(FL) (0005)                          Page 9 of 16                    Form 3010   1/01

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: _____ DF     Form 3910   1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument

Initials: _____  Form 3010  1/01

Page 11 of 16

shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument,

-6A(FL) (0005)                    Page 12 of 16                    Initials: ____    Form 3010   1/01

and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental

-6A(FL) (0005)

Page 13 of 16

Initial

Form 3010   1/01

Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

6A(FL) (0405)                     Page 14 of 16                Initials: _____        Form 3010   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____
CARDLINEA-VELEZ

_____ (Seal)
ANTONIO MOREJON          -Borrower
11251 SW 157 STREET
MIAMI, FL   33157

(Address)

_____
DuAnn Corbell

_____ (Seal)
DELFINA MOREJON          -Borrower
11251 SW 157 STREET
MIAMI, FL   33157

(Address)

_____ (Seal)      _____ (Seal)
-Borrower                                      -Borrower

(Address)                                      (Address)

_____ (Seal)      _____ (Seal)
-Borrower                                      -Borrower

(Address)                                      (Address)

_____ (Seal)      _____ (Seal)
-Borrower                                      -Borrower

(Address)                                      (Address)

Page 15 of 16                                  Form 3010   1/01

STATE OF FLORIDA,   MIAMI-DADE                          County ss:
The foregoing instrument was acknowledged before me this   May 23, 2007                          by
ANTONIO MOREJON and DELPINA MOREJON

DL# 71625-000-26-139-0                     ID# 71625-160-30-832-0

who is personally known to me or who has produced   DRIVER'S LICENSE AND FLORIDA ID.   as identification.

Notary Public

Carolina Velez
Commission # DD286369
Expires: Feb. 01, 2008
Aaron Notary 1-650-350-5181

-6A(FL) (0001)                    Page 16 of 16                          Form 3010   1/01

OR BK 25890 PG 1581
LAST PAGE

## LEGAL DESCRIPTION

Lot 6, Block 3, of CORAL WOODS, according to the Plat thereof, as recorded in Plat Book 114, at Page 65, of the Public Records of Miami-Dade County, Florida.

*ADDW UF*

Clusers' Choice

 

ORIGINAL

## NOTE

May 23, 2007  CORAL GABLES  Florida
[Date]  [City]  [State]

11251 SW 157 STREET, MIAMI, FL  33157
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 57,000.00  (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Brokers Conduit

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st  day of each month beginning on  July 1st, 2007  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  June 1, 2037  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  PO Box 660029, Dallas, TX  75266-0029
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 597.25

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

DOC #:  APPL #
FLORIDA FIXED RATE NOTE-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(601 0605

-SN(FL) (0005)  Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3  Initials: _____




## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be           5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

DOC                                   APPL #:

(logo) -SN(FL) (0009)                 Page 2 of 3                              Form 3210 1/01
                                                                             Initials: _____
                                                                                       DF

 

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
ANTONIO MOREJON                  -Borrower

_____ (Seal)
DELFINA MOREJON                  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PAY TO THE ORDER OF
U.S. MORTGAGE CORPORATION
-Borrower

WITHOUT RECOURSE
IMPAC FUNDING CORPORATION

BY: _Linh Pham_          [Sign Original Only]
LINH PHAM, AUTHORIZED SIGNATORY

PAY TO THE ORDER OF

IMPAC FUNDING CORPORATION

WITHOUT RECOURSE
BY AMERICAN BROKERS CONDUIT

DELSY CRUZ
ASST. SECRETARY

-5N(FL) (0005)          APPL #:          Page 5 of 5          Form 3210 1/01

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN CASEY
WAREHOUSE COORDINATOR

### INDEPENDENT CONTRACTOR AGREEMENT BETWEEN ATTORNEY'S ADVANTAGE GROUP AND _____ ,ESQ.

This Agreement is entered into as of this _____ day of _____, 20____, between Attorney's Advantage Group ("Company") and _____, Esq. ("the Contractor").

1. **Independent Contractor** Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement. The Contractor agrees to provide coverage on a per diem basis, at his or her discretion.

2. **Confidentiality** The Contractor acknowledges that during the engagement he or she will have access to and become acquainted with various trade secrets, inventions, innovations, processes, information, records and specifications owned or licensed by the Company and/or used by the Company in connection with the operation of its business including, without limitation, the Company's business and product processes, methods, client lists, accounts and procedures. The Contractor agrees that he or she will not disclose any of the aforesaid, directly or indirectly, or use any of them in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement with the Company. The Contractor shall shred all confidential documents immediately after use and permanently delete all confidential emails immediately after completion of services. The Contractor further agrees that he or she will not disclose his or her retention as an independent contractor or the terms of this Agreement to any person without the prior written consent of the Company and shall at all times preserve the confidential nature of his relationship to the Company and of the services hereunder. The Contractor will also keep the clients of AAG's clients (attorneys and law firms and their clients) and any related information confidential. The Contractor will not directly contact AAG's clients (attorneys and law firms) and their clients without written permission. Such permission will be limited to a one-time authorization. The Contractor agrees to not make any contact with AAG's clients for six months after this relationship ends regarding appearance coverage (including but not limited to jail visits, first appearances, hearings, mediations, levy sales, trials and depositions) services offered by the Company, in all counties the attorney has listed to receive notifications requesting coverage and/or has covered. This relationship ends when either the Company or the Contractor notifies the other of an intent to end the relationship.

3. **Relationship of the parties** This Agreement shall not render the Contractor an employee, partner, agent of, or joint venturer with the Company for any purpose. The Contractor is and will remain an independent contractor in his or her relationship to the Company. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder. The Contractor shall have no claim against the Company hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

4. **Assignment** The Contractor shall not assign any of his or her rights under this Agreement, or delegate the performance of any of his or her duties hereunder, without the prior written consent of the Company.

5. **Payment** The Contractor will be paid a flat fee for each appearance covered, which will be determined prior to the Contractor's acceptance to cover. The Contractor must use the current version of Chase QuickPay to receive payment.

6. **Notices** The Contractor must notify AAG when he or she is no longer available for coverage so that AAG can remove the Contractor from its list and find suitable replacement.

7. **Indemnity Clause** The Contractor hereby agrees to defend, indemnify, protect, and hold harmless Attorney's Advantage Group from and against any losses, penalties, damages, settlements, costs, and liabilities of any kind arising out of or relating to any claims, demands, and actions related to the representation of clients.

8. **Governing Law** This Agreement is governed by the laws of the state of Florida and venue of any actions arising out of this Agreement shall be in the state courts in Orange County, Florida.

9. **Addendum** The Contractor acknowledges it received a copy of the "Coverage Attorney Guidelines" and agrees to abide by the instructions contained within the "Coverage Attorney Guidelines." The Contractor agrees that failure to abide by the "Coverage Attorney Guidelines" will result in removal from the group and nonpayment. If Contractor misses a hearing or is late for a hearing, Contractor will not get paid and will owe $25.00 to AAG which will be deducted from the soonest payment after. If Contractor cancels an appearance, the Contractor will owe AAG $25.00 which will be deducted from the soonest payment after. If results are received after 5:00pm without a prior notification and reason why results will be late, then the late results will result in a payment deduction of $25.00. Results submitted 24 hours or more after the appearance will result in a 50% payment deduction. Failure to send formal results will result in non-payment. Contractor will receive an email with detailed instructions on how to sign up to receive electronic payment when the first payment is made.

10. **Severability** If any part of this Agreement is declared unenforceable or invalid, the remainder will continue to be valid and enforceable.

_____

Sarah E. Flores, Esq.
Attorney's Advantage Group

_____

Printed Name

_____

Signed Name

_____

Date

_____

Date

CFN: 20160528405 BOOK 30224 PAGE 3952
DATE:09/09/2016 01:13:58 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

IN THE CIRCUIT COURT OF THE 11ᵀᴴ JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 12-2686 (02) CA 01

NATIONSTAR MORTGAGE LLC,
               Plaintiff,

vs.

THE UNKNOWN HEIRS, DEVISEES, GRANTEES,
ASSIGNEES, LIENORS, CREDITORS, TRUSTEES,
OR OTHER CLAIMANTS CLAIMING BY, THROUGH,
UNDER, OR AGAINST, ANTONIO MOREJON,
DECEASED, et al.,

_____/

## AMENDED FINAL IN REM JUDGMENT OF FORECLOSURE
## ADDING ATTORNEY'S FEES PER STIPULATION

**THIS ACTION** was heard before the Court on Thursday, June 9, 2016, for non-jury trial. On the evidence presented, **IT IS ORDERED AND ADJUDGED** that:

1. Final in Rem Judgment is entered in favor of the Plaintiff, NATIONSTAR MORTGAGE LLC, and against Defendants, Carlos Morejon as heir and as personal representative of the Estate of Antonio Morejon (the "Estate"), Antonio Morejon, Jr. as heir of the Estate, Unknown heirs, devisees, grantees, assignees, lienors, creditors, trustees of the Estate, American Express Company, and Capital One Bank (USA), pursuant to Florida law, and this Court has jurisdiction over this matter and the parties. Plaintiff has complied with all conditions precedent to the filing of this action.

2. **Amounts Due and Owing.** Plaintiff is due the following amounts under the Note and Mortgage:

| | |
|---|---|
| Principal due on the note secured by the mortgage foreclosed: | $ 92,574.43 |
| Interest at initial note rate of 6.25% (Dec.1, 2010 through May 2, 2016): | $ 31,467.20 |
| Property Taxes | $ 9,590.34 |
| Hazard Insurance | $ 21,310.66 |
| Property Inspections | $ 531.65 |
| Property Preservation | $ 325.00 |
| Attorneys' Fees: | |
|     Finding as to reasonable number of hours - 40 | |
|     Finding as to reasonable hourly rate - $250.00 | |
|         Attorneys' Fees Total | $ 10,000.00 |
| Court Costs, Now Taxed: | |
| Filing fee | N/A |
| **GRAND TOTAL** | **$ 165,799.28** |

4815-3397-8161.1
27876/0516

Exhibit "B"

CFN: 20160528405 BOOK 30224 PAGE 3953

3.    **Interest.** The grand total amount referenced in Paragraph 2 shall bear interest from this date forward at the prevailing legal rate of interest, currently 4.75% a year.

4.    **Lien on Property**.  Plaintiff, whose address is: 350 Highland Drive, Lewisville, TX 75067, holds a lien for the grand total sum superior to all claims or estates of the defendant(s), on the following described property in Miami-Dade County, Florida:

**LOT 6, BLOCK 3, OF CORAL WOODS, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 114, AT PAGE 65 OF THE PUBLIC RECORDS OF DADE COUNTY, FLORIDA.**

**a/k/a 11251 SW 157th St, Miami, FL 33157-1122.**

5.    **Sale of property.**  If the grand total amount with interest at the rate described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on **October 7, 2016**, at 9:00 A.M. to the highest bidder for cash, except as prescribed in Paragraph 6, after having first given notice as required by Section 45.031, Florida Statutes. The subject property shall be sold by electronic sale at: www.miamidade.realforeclose.com.

6.    **Costs.**  Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for documentary stamps affixed to the certificate of title.  If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

7.    **Right of Redemption**.  On filing the Certificate of Sale, Defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315, shall be terminated.

8.    **Distribution of Proceeds.**  On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 3 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

9.    **Right of Possession.**  Upon filing of the Certificate of Sale, Defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under Chapter 718 or Chapter 720, Fla. Stat., if any. Upon filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property, subject to the provisions of the Protecting Tenants at Foreclosure Act of 2009.

10.    **Attorney Fees**. Attorney fees have been awarded herein per Stipulation.

11.    **Jurisdiction.**  The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession, re-foreclosure, and attorneys' fees and costs.

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI , FLORIDA (TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733),   TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

CFN: 20160528405 BOOK 30224 PAGE 3955

**DONE AND ORDERED** at Miami, Miami-Dade County, Florida, this _____8th_____ day of September, 2016.

CIRCUIT COURT JUDGE

MONICA GORDO
CIRCUIT COURT JUDGE

Conformed copies furnished to:

Steven Ellison, Esquire
sellison@broadandcassel.com
Broad and Cassel
One North Clematis Street, Suite 500
West Palm Beach, FL 33401

Monica Amador, Esquire
Abbie B. Cuellar, Esquire
efiling@aclawoffices.net
Amador & Cuellar, PLLC
1330 SW Coral Way, Suite 302
Miami, FL 33145

Robert Thaxton, Esquire
rthaxton@albertellilaw.com
Albertelli Law
P.O. Box 23028
Tampa, FL 33623

Monica Medina, Esquire
Medina-law@hotmail.com
5005 Collins Avenue, Apt. 1425
Miami Beach, FL 33140

Antonio Morejon, Jr.
15429 Praire Avenue
Lawndale, CA 90260

Capital One Bank
1111 E. Main Street
Richmond, VA 23219

American Express Co.
c/o CT Corp. System
1200 South Pine Island Road
Plantation, FL 33324



PO Box 23028, Tampa, FL, 33623
Phone: 813.221.4743 I Fax: 813.221.9171 I alaw.net

December 7, 2016

BORROWER/AUTHORIZED REQUESTOR NAME          Amador & Cuellar, PLLC.
  Mailing Address:
Loan Number:            0596469322
Property Address:       11251 SW 157th St, Miami, FL 33157-1122
ALAW File Number:       11-80993

VIA FACSIMILE / EMAIL:          (305) 647-0669 / ashley@aclawoffices.net
Re: Pay Off Quote

Borrower or Representative:

This correspondence is in direct response to your request, or an authorized request on your behalf, for
information regarding the amount required to pay off your above-referenced loan, pursuant to the terms of
the loan documents.  Payment of the amount quoted herein will pay off the balance owed on the referenced
loan as of the date of this letter.  Because ALAW cannot estimate future fees and expenses, payment of this
amount may not pay off the balance owed if it is not **received** by ALAW before 5:00 pm eastern today.  If a
future payment is received that fails to cure the then existing balance owed, ALAW will either return the
funds, or provide a supplemental pay off quote setting forth the additional funds needed to pay off the loan.
Until the loan is fully paid off, reinstated or we are required to place this matter on hold, this Firm will
continue to prosecute the foreclosure action and will not suspend or cancel any hearing, trial or sale of the
property.

If payment of the amount quoted is received, the Creditor may thereafter recover expenses for trailing
publication fees, and/or legal fees and costs that are incidental to dismissing the foreclosure action, stopping
a sale, and/or removing a notice of foreclosure from the property records, if any.  These expenses and fees
will then be added to the loan balance.  This notice is not an attempt to collect these trailing fees or costs, but
is to inform you that trailing expenses, if any, cannot be estimated by ALAW and have not been included
herein.  Therefore, the Creditor does not waive its right to add these trailing fees and expenses to the newly
reinstated loan balance as these expenses are only incurred or known subsequent to our providing you with
this quote.

Finally, this quote does not include any amounts associated optional products that may have been purchased
with the loan.  These products include, but are not limited to, mortgage life, accidental death and disability
insurance policies.

**WE MAY BE CONSIDERED A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A
DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN
BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT
INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS,
OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

**Page 1 of 2**

Exhibit "C"

ALAW File Number 11-80993,
Property address: 11251 SW 157th St, Miami, FL 33157-1122 and Loan Number:
0596469322 Pay Off Quote

**PAY OFF QUOTE:**

| Final Judgment Amount (Entered 6.9.16) | $165,799.28 |
|---|---|
| 182 Days PJ Interest @ $21.58 | $3,927.56 |
| Escrow | $2,544.47 |
| Property Inspections | $60.00 |
| Outstanding Attorney Fees and Costs Not Included in Corporate Advances | $1,340.00 |
| **TOTAL Through 12/07/2016** | $173,671.31 |

**PAYMENT OPTIONS:**

### VIA WIRE TRANSFER

| Wire to: | Albertelli Law IOLTA, c/o US AMERIBANK |
|---|---|
| Address: | 4790 140th Avenue North Clearwater, FL 33762 |
| Routing/ABA #: | 063116177 |
| Account #: | 500110747 |
| Reference Information: | File No: 11-80993 Case No: 13 2012 CA 002686 Borrower(s) Last Name: Morejon |

### VIA CERTIFIED CHECK

| Payable to: | Nationstar Mortgage LLC |
|---|---|
| Delivery Method (recommended): | Certified Mail, FedEx or UPS |
| Delivery Address: | ALAW Attention: Accounting Department 5404 Cypress Center Drive, Suite 300 Tampa, FL 33609 |

Prior to tendering payment, please verify the loan number, the name(s) of the Borrower(s), the property address and the amounts due.

Please direct questions regarding this reinstatement quote to the ALAW Reinstatement & Pay Off Department at (813) 221-4743 extension 1973 or reinstate@alaw.net.

**WE MAY BE CONSIDERED A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**



PO Box 23028, Tampa, FL, 33623
Phone: 813.221.4743 I Fax: 813.221.9171 I alaw.net

February 21, 2017

BORROWER/AUTHORIZED REQUESTOR NAME          Alberto Rodriguez Esq
  Mailing Address:
Loan Number:              0596469322
Property Address:         11251 SW 157th St, Miami, FL 33157-1122
ALAW File Number:         11-80993

<u>VIA FACSIMILE / EMAIL:</u>          arodriguez@alaw.net
Re: Pay Off Quote

Borrower or Representative:

This correspondence is in direct response to your request, or an authorized request on your behalf, for information regarding the amount required to pay off your above-referenced loan, pursuant to the terms of the loan documents.  Payment of the amount quoted herein will pay off the balance owed on the referenced loan as of the date of this letter.  Because ALAW cannot estimate future fees and expenses, payment of this amount may not pay off the balance owed if it is not **received** by ALAW before 5:00 pm eastern today.  If a future payment is received that fails to cure the then existing balance owed, ALAW will either return the funds, or provide a supplemental pay off quote setting forth the additional funds needed to pay off the loan.  Until the loan is fully paid off, reinstated or we are required to place this matter on hold, this Firm will continue to prosecute the foreclosure action and will not suspend or cancel any hearing, trial or sale of the property.

If payment of the amount quoted is received, the Creditor may thereafter recover expenses for trailing publication fees, and/or legal fees and costs that are incidental to dismissing the foreclosure action, stopping a sale, and/or removing a notice of foreclosure from the property records, if any.  These expenses and fees will then be added to the loan balance.  This notice is not an attempt to collect these trailing fees or costs, but is to inform you that trailing expenses, if any, cannot be estimated by ALAW and have not been included herein.  Therefore, the Creditor does not waive its right to add these trailing fees and expenses to the newly reinstated loan balance as these expenses are only incurred or known subsequent to our providing you with this quote.

Finally, this quote does not include any amounts associated optional products that may have been purchased with the loan.  These products include, but are not limited to, mortgage life, accidental death and disability insurance policies.

**WE MAY BE CONSIDERED A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

Exhibit "D"

ALAW File Number 11-80993,
Property address: 11251 SW 157th St, Miami, FL 33157-1122 and Loan Number:
0596469322 Pay Off Quote

**PAY OFF QUOTE:**

| | |
|---|---|
| Final Judgment Amount (Entered 10.6.16) | $165,799.28 |
| 139 Days PJ Interest @ $21.58/Day | $2,999.62 |
| Escrow | $6,484.47 |
| Corporate Advances | $7,637.45 |
| Outstanding Attorney Fees and Costs Not Included in Corporate Advances | $2,035.00 |
| **TOTAL Through 02/21/2017** | $184,955.82 |

**PAYMENT OPTIONS:**

### VIA WIRE TRANSFER

| | |
|---|---|
| Wire to: | Albertelli Law IOLTA, c/o US AMERIBANK |
| Address: | 4790 140th Avenue North Clearwater, FL 33762 |
| Routing/ABA #: | 063116177 |
| Account #: | 500110747 |
| Reference Information: | File No: 11-80993 Case No: 13 2012 CA 002686 Borrower(s) Last Name: Morejon |

### VIA CERTIFIED CHECK

| | |
|---|---|
| Payable to: | Nationstar Mortgage LLC |
| Delivery Method (recommended): | Certified Mail, FedEx or UPS |
| Delivery Address: | ALAW Attention: Accounting Department 5404 Cypress Center Drive, Suite 300 Tampa, FL 33609 |

Prior to tendering payment, please verify the loan number, the name(s) of the Borrower(s), the property address and the amounts due.

Please direct questions regarding this payoff quote to the ALAW Reinstatement & Pay Off Department at (813) 221-4743 extension 1973 or reinstate@alaw.net.

**WE MAY BE CONSIDERED A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**



PO Box 23028, Tampa, FL, 33623
Phone: 813.221.4743 | Fax: 813.221.9171 | alaw.net

March 15, 2017

BORROWER/AUTHORIZED REQUESTOR NAME        Alberto Rodriguez Esq
  Mailing Address:
Loan Number:            0578180449
Property Address:       11251 SW 157th St, Miami, FL 33157-1122
ALAW File Number:       11-80993

VIA FACSIMILE / EMAIL:        arodriguez@alaw.net
Re: Reinstatement Quote

Borrower or Representative:

This correspondence is direct response to your request, or an authorized request on your behalf, for information regarding the amount required to reinstate your above-referenced loan, pursuant to the terms of the loan documents.  Payment of the reinstatement amount quoted herein will reinstate the delinquency on the referenced loan as of the date of this letter.  Because ALAW cannot estimate future fees and expenses, payment of this amount may not bring the loan current if it is not **received** by ALAW before 5:00 pm eastern today.  If a future payment is received that fails to cure the then existing delinquency, ALAW will either return the funds, or provide a supplemental reinstatement quote setting forth the additional funds needed to reinstate the loan.  Until the loan is fully reinstated, this Firm will continue to prosecute the foreclosure action and will not suspend or cancel any hearing, trial or sale of the property.

If the loan is fully reinstated, the Creditor may thereafter recover expenses for trailing publication fees, and/or legal fees and costs that are incidental to dismissing the foreclosure action, stopping a sale, and/or removing a notice of foreclosure from the property records, if any.  These expenses and fees will then be added to the reinstated loan balance.  This notice is not an attempt to collect these trailing fees or costs, but is to inform you that trailing expenses, if any, cannot be estimated by ALAW and have not been included herein.  Therefore, the Creditor does not waive its right to add these trailing fees and expenses to the newly reinstated loan balance as these expenses are only incurred or known subsequent to a reinstatement.

Finally, the reinstatement quote does not include any amounts associated with optional products that may have been purchased with the loan.  These products include, but are not limited to, mortgage life, accidental death and disability insurance policies.

**WE MAY BE CONSIDERED A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

**Page 1 of 2**

Exhibit ___"E"___

ALAW File Number 11-80993,
Property address: 11251 SW 157th St, Miami, FL 33157-1122 and Loan Number:
0578180449 Reinstatement Quote

**REINSTATEMENT QUOTE:**

| | |
|---|---:|
| Final Judgment Amount (Entered 10.6.16) | $165,799.28 |
| 161 Days PJ Interest @ $22.30 | $3,590.30 |
| Escrow | $6,484.47 |
| Recording Fees | $10.00 |
| Inspections | $154.35 |
| Pool Work | $325.00 |
| Outstanding Attorney Fees and Costs Not Included in Corporate Advances | $2,380.00 |
| **TOTAL Through 03/15/2017** | $178,743.40 |

**PAYMENT OPTIONS:**

**VIA WIRE TRANSFER**

| | |
|---|---|
| Wire to: | Albertelli Law IOLTA, c/o US AMERIBANK |
| Address: | 4790 140th Avenue North Clearwater, FL 33762 |
| Routing/ABA #: | 063116177 |
| Account #: | 500110747 |
| Reference Information: | File No: 11-80993 Case No: 13 2012 CA 002686 Borrower(s) Last Name: Morejon |

**VIA CERTIFIED CHECK**

| | |
|---|---|
| Payable to: | SHELLPOINT MORTGAGE SERVICING |
| Delivery Method (recommended): | Certified Mail, FedEx or UPS |
| Delivery Address: | ALAW Attention: Accounting Department 5404 Cypress Center Drive, Suite 300 Tampa, FL 33609 |

Prior to tendering payment, please verify the loan number, the name(s) of the Borrower(s), the property address and the amounts due.

Please direct questions regarding this payoff quote to the ALAW Reinstatement & Payoff Department at (813) 221-4743 extension 1973 or reinstate@alaw.net.

WE MAY BE CONSIDERED A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.

HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



**Shellpoint** Mon - Thurs: 8:00AM-6:00PM
Fri: 8:00AM-5:00PM

Mortgage Servicing

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
e-Mail: Lossmitigation@shellpointmtg.com

S-SFRECS20 L-1303 R-106
P6PU7S00301733 - 511758625 I03466
ANTONIO MOREJON
DELFINA MOREJON
11251 SW 157TH ST
MIAMI FL 33157-1122

| Loan Number: | 0578180449 |
|---|---|
| Principal Balance: | $92,574.43 |
| Property: | 11251 Sw 157 Street Miami, FL 33157 |

03/07/2017

**Dear Antonio Morejon and Delfina Morejon:**

The above referenced mortgage loan serviced by Shellpoint Mortgage Servicing ("Shellpoint"), on the above referenced property is in default and foreclosure proceedings have or may soon commence. Because you have not taken steps to resolve the delinquency, we have been instructed by the owner of your mortgage loan to commence foreclosure.

In addition to foreclosing on the property, the owner of the mortgage loan may seek a deficiency judgment against you if the proceeds from the foreclosure sale do not pay off the amount you owe on the mortgage loan.

**Foreclosure Alternatives**

If you are unable to pay your mortgage loan because of a financial hardship, there are options that may be available to you—such as a loan modification or other foreclosure alternatives, including short sale or deed-in-lieu of foreclosure.

You may have received a Borrower Solicitation Package. It is not too late for you to be evaluated for an alternative to foreclosure even if you previously expressed that you were not interested in a foreclosure alternative. If you did not receive or no longer have in your possession the Borrower Solicitation Package, you should contact Shellpoint to obtain another package. You can contact Raquel Melendez at the telephone number and address listed below.

Shellpoint Mortgage Servicing
ATTN: Loss Mitigation Department
P.O. Box 10826
MS: 157
Greenville, SC 29603-0826
Telephone: 888-539-5219 ext. 7681

Your Borrower Response Package must be completed and sent to Shellpoint in order to be considered for alternatives to foreclosure. Shellpoint's contact information for submitting a complete Borrower Response Package is below:

Shellpoint Mortgage Servicing
ATTN: Loss Mitigation Department
P.O. Box 10826
MS: 157
Greenville, SC 29603-0826
Telephone: 888-539-5219 ext. 7681

If you have been previously denied a loan modification, and you are contemplating an appeal or have a pending appeal of this denial, you may submit a loan modification application in lieu of this appeal within 30 days after the date of this notice.

HUD-approved counselors are available to provide you with the information and assistance you may need to avoid foreclosure. You can use the search tool at http://www.hud.gov/offices/hsg/sfh/hcc/fc/ to find a counselor near you or by calling 1(888)995-HOPE (4673).

Sincerely,
Shellpoint Mortgage Servicing

Exhibit "F"

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001 A-0578180449 006260101J0400